*429 Plaintiff alleges that he was wrongfully terminated from his position because of a disability, in violation of the New York State Human Rights Law (Executive Law § 296 [1] [a]) and the New York City Human Rights Law (Administrative Code of City of NY § 8-107 [1] [a]). In 1979, plaintiff began working as an assistant health facilities planner with defendant, New York City Health and Hospitals Corporation (HHC). Plaintiff monitored the independent contractors on construction and renovation jobs at facilities operated by HHC. He would visit the job sites one or two days a week to meet with facility directors, examine existing structures, and review and supervise the contractors’ work. Plaintiff would spend the remaining work week at HHC’s central office in Manhattan, completing written and oral reports on the progress of various projects.
In 1982, plaintiff was promoted to Health Facilities Planner, and although this promotion assigned him to larger projects, his daily tasks remained the same. In August 2005, plaintiff was assigned to the Queens Hospital Network, whose main hospital was undergoing major renovation. As a result of this reassignment, plaintiffs office was relocated to Queens Hospital and he only worked at the central office once a week or every other week, to attend meetings. Plaintiff was also required to visit construction areas at Queens Hospital on a daily basis.
In September 2005, plaintiff was diagnosed with pneumoconiosis, an occupational lung disease. In October 2005, plaintiff requested, and was granted, a medical leave of absence. Plaintiffs physician, Dr. Skloot, stated on plaintiffs application for leave that he “currently cannot perform usual tasks” and that he was unable to perform any one or more of the essential functions of his job since he “should not be exposed to inhaled dusts.” In a December 2005 letter to HHC, Dr. Skloot cleared plaintiff to return to work on January 3, 2006, but directed that he not be present at any construction site. HHC sent a follow-up letter to Dr. Skloot listing plaintiffs duties and explaining that he is required to spend approximately 75% of his time in the field monitoring construction sites. HHC asked for clarification as to whether or not, based on the provided information, plaintiff was cleared to fully perform the “essential functions of his duties.”
*430 On January 5, 2006, plaintiffs union representative sent a letter to HHC requesting that plaintiff be permitted to return to work with an accommodation of being assigned work “that he is capable of doing in the office.” On March 21, 2006, plaintiff provided another letter from Dr. Skloot stating that he was medically cleared to work in the field. Plaintiff returned to work at the Queens Hospital location on March 27, 2006.
From March until May of 2006, plaintiff did not request any further accommodation from HHC and continued to make field visits during this time. On May 10, plaintiff sent a letter to his supervisor in the central office, Vincent James, requesting relocation to that office as a reasonable accommodation. James determined that plaintiff needed to spend approximately 80% of his time in the field, which included visiting construction sites, to fully complete the “essential functions” of his position. James explained that eliminating all construction sites from plaintiffs duties would make it impossible for him to perform his job.
By letter dated June 6, 2006, HHC informed plaintiff that he would be placed on unpaid medical leave for six months and his job would be left open in the event that his condition improved. The letter explained that plaintiffs proposed accommodation, relocation to the central office, was infeasible because plaintiff s position required that he visit facilities that have ongoing construction. In August 2006, Dr. Skloot wrote to HHC in response to a request for clarification of plaintiffs medical condition. Dr. Skloot advised that plaintiff could never be medically cleared to perform the essential functions of his current duties because he should not be further exposed to any type of environmental dust. Dr. Skloot further stated that plaintiff was cleared to do office work only. On March 26, 2007, at the conclusion of the six months of unpaid leave, plaintiffs employment was terminated.
Plaintiff subsequently commenced this action for wrongful termination because of a disability. Defendant moved for summary judgment, arguing that plaintiffs termination was proper insofar as he was unable to perform an essential function of his position — namely, visiting construction sites to inspect the progress of construction. The motion court properly granted summary judgment, finding that plaintiffs job, by his own admission, required him to spend substantial time at construction sites. The motion court further concluded that since plaintiffs own doctor determined that he could not spend time in the field, the inevitable conclusion was that he could never return to his duties.
The majority and the dissent agree on the basic law appli *431 cable to this case. To state a prima facie case of employment discrimination due to a disability, a plaintiff must demonstrate that he or she suffered from a disability and that the disability caused the behavior for which he or she was terminated (Matter of McEniry v Landi, 84 NY2d 554, 558 [1994]). Once a plaintiff establishes a prima facie case, the burden shifts to the employer, here HHC, to show that the disability prevented plaintiff “from performing the duties of the job in a reasonable manner or that the employee’s termination was motivated by a legitimate nondiscriminatory reason” (id.). HHC met its burden by establishing that at the time of termination, plaintiff was unable to perform the duties of his job because of his lung condition and that no reasonable accommodation was available.
Under the Executive Law, a “reasonable accommodation” is defined as “actions taken by [an] employer which permit an employee . . . with a disability to perform in a reasonable manner the activities involved in the job or occupation sought or held . . . provided, however, that such actions do not impose an undue hardship on the business” (Pimentel v Citibank, N.A., 29 AD3d 141, 145 [2006], lv denied 7 NY3d 707 [2006], quoting Executive Law § 292 [21-e]). Under the City’s Human Rights Law, an employer “shall make reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job” (Administrative Code § 8-107 [15] [a]). An employer is not required to find another job for the employee, create a new job, or create a light-duty version of the current job (Pimentel, 29 AD3d at 148).
HHC established that plaintiff could not, even with a reasonable accommodation, perform the essential functions of his job (Executive Law § 292 [21]; Administrative Code § 8-107 [15]). Vincent James, plaintiffs supervisor at the central office, testified that plaintiffs position required him to spend the majority of his time at construction sites. The only way plaintiff would be able to report on construction progress was to be present at the site; therefore, it was not possible for plaintiff to complete his duties from the central office. HHC pointed to letters from Dr. Skloot and plaintiffs own deposition testimony in which he admits that he can no longer visit construction sites, which was the bulk of his work. Although plaintiff claimed he could perform all his duties from the central office, he failed to explain how he could monitor the progress of construction and renovation projects, an essential function of his job, from the central office without visiting the sites.
Under both New York’s Executive Law and the City’s Administrative Code, an employer is required to perform an in *432 dividual assessment of an employee prior to terminating him (Bellamy v City of New York, 14 AD3d 462 [2005]). This assessment must be part of a “good faith interactive process” (Phillips v City of New York, 66 AD3d 170, 175 [2009]). Contrary to the dissent’s finding, the record shows that HHC engaged in an interactive process. HHC sought clarification from Dr. Skloot regarding plaintiffs medical condition and his ability to perform his job. Indeed, they kept plaintiffs job open during two separate medical leaves, during which time HHC was in communication with plaintiff and his doctor. HHC provided Dr. Skloot with plaintiffs job description and made her aware that plaintiff was required to spend a portion of his time in the field at construction sites. It was only after plaintiffs doctor and plaintiff himself confirmed that he could no longer work at construction sites that HHC terminated him.
Plaintiff also contends that HHC failed to make a reasonable accommodation by assigning him back to Queens Hospital in March 2006 without providing him with proper respiratory equipment that would prevent any further exacerbation of his lung condition. However, plaintiff focused below on HHC’s denial of his request to work in an office, not on the adequacy of the equipment provided to him. In fact, plaintiffs affidavit in opposition to the motion for summary judgment stated that HHC could have relocated him to the central office. It is only on appeal that plaintiff focuses on the argument that he could have remained at Queens Hospital full-time as long as he had proper respiratory equipment.
The dissent contends that HHC did not engage in an interactive process regarding the respiratory equipment, and as support, points to plaintiff’s deposition testimony that at some point in March 2006, he complained to his supervisor at Queens Hospital about the dust and requested a respirator. However, plaintiff also stated at his deposition that after complaining about the dust, he was provided with a dust mask. Plaintiff testified he did not consistently wear that mask because it made it difficult to communicate. Thus, having failed to wear the mask given to him, plaintiff can hardly complain he never got protection. Further, although plaintiff now argues that the dust mask was inadequate, he never made any additional complaints to his supervisor or anyone else about it, nor did he request different equipment than what he was given. Finally, all of the letters that plaintiff relies on, from his doctor, union representative, and plaintiff himself, make a request for relocation to the central office or an environment free of dust. None of the letters ask for a respirator so that plaintiff could remain at the *433 Queens Hospital location. In this case, HHC should not be held responsible for not engaging further with plaintiff about the respirator when plaintiffs own doctor provided documentation supporting a transfer to an office job as the solution for plaintiffs disability.
The motion court also properly dismissed plaintiffs claim of gross negligence since the action was not commenced until more than three years after the claim accrued (see McKinney’s Uncons Laws of NY § 7401 [2] [New York City Health and Hospitals Corporation Act § 20, as added by L 1969, ch 1016, § 1, as amended]). Plaintiffs argument that the claim accrued on the date of his termination is without merit since the claim for gross negligence arose from personal injuries caused by alleged exposure to asbestos and not from his termination. In any event, plaintiffs action is barred by operation of the Workers’ Compensation Law (see Acevedo v Consolidated Edison Co. of N.Y., 189 AD2d 497 [1993], lv dismissed 82 NY2d 748 [1993]; Workers’ Compensation Law § 11).
We have considered plaintiffs remaining contentions and find them unavailing. Concur — Tom, J.P, Catterson, DeGrasse and Richter, JJ.